[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 97-5195

———————————————

D. C. Docket No. 95-2508-cv-LCN

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
2/18/03
THOMAS  K. KAHN
CLERK

BERTRAM ROBERTS, HANNI ROBERTS,,

Plaintiffs-Appellants,

versus

FLORIDA POWER & LIGHT COMPANY,
A Florida Public Utility Corporation,

Defendant-Appellee.

———————————————

Appeal from the United States District Court
for the Southern District of Florida

———————————————

**(July 22, 1998)**

Before CARNES and HULL, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

Bertram and Hanni Roberts filed this tort action in the Circuit Court of Dade County, Florida against Florida Power & Light ("FPL"), alleging that Bertram Roberts developed leukemia as a result of exposure to radiation at FPL's Turkey Point Nuclear Plant. FPL removed the case to the

United States District Court for the Southern District of Florida and subsequently moved to dismiss for failure to state a claim. The district court granted that motion. We affirm.

## I. BACKGROUND

Over the past 50 years, Congress has established a comprehensive federal framework governing the nuclear power industry, beginning with the enactment of the Atomic Energy Act in 1946. That statute granted the federal government a monopoly on the development of nuclear power. Congress subsequently determined that it was in the national interest to encourage the private sector to participate in this effort. Toward that end, the Atomic Energy Act of 1954 established the Atomic Energy Commission and gave it authority to license and regulate nuclear power plants. See 42 U.S.C. § 2011 et seq. Private power companies were reluctant to invest in nuclear facilities, however, because of concerns about their liability. To address that problem, Congress enacted the Price-Anderson Act in 1957. That statute contained three main features: it (1) established a limit on the aggregate liability of those who wished to undertake activities involving the handling of nuclear material, 2) channeled public liability resulting from nuclear incidents to the federal government and 3) provided that all public liability claims above the amount of required private insurance would be indemnified by the federal government. See Pub.L. 85-256, 71 Stat. 576 (1957).

After several further changes to the statute, Congress passed the Price-Anderson Amendments Act of 1988 ("the Amendments Act"), creating an exclusive federal cause of action for radiation injury. The statute defines a "public liability action" as any suit asserting public liability growing out of exposure to nuclear radiation, 42 U.S.C. § 2014(hh), and defines "public liability" as any legal liability arising out of or resulting from a nuclear incident[1] or precautionary

---

[1] A "nuclear incident" is defined in part "as any occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or without the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of

evacuation, id. at 2014(w). The Amendments Act also provided for the removal of, and original federal jurisdiction over, claims for any nuclear incident. 42 U.S.C. § 2210(n)(2).[2] Congress further required that the substantive rules of decision to be applied by the courts in such cases "shall be derived from the law of the state in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of" section 2210 of the Price Anderson Act.[3] 42 U.S.C. § 2014(hh). One of the principal issues arising out of these hybrid actions is whether state tort standards of care are consistent with federal radiation exposure regulations or are inconsistent and, thereby, preempted.[4]


II. FACTS AND PROCEEDINGS IN THIS CASE

Bertram Roberts was employed as an electrician by FPL at its Turkey Point Nuclear Plant from 1966 to 1989. He developed myelogenous leukemia in 1993 after his retirement. Roberts and his wife, Hanni Roberts, filed this action against FPL contending that his disease resulted from his exposure to radiation at the plant. The complaint asserted causes of action for negligence, strict liability and Hanni Roberts' claim for loss of consortium. Since this was a public liability action within the meaning of the Amendments Act, the district court had original jurisdiction over all the plaintiffs' allegations of liability, and FPL timely removed the action to that court.

source, special nuclear, or byproduct material ...." 42 U.S.C. § 2014(q).

[2]Prior to the passage of the Amendments Act, the grant of federal jurisdiction and right of removal were available only in actions resulting from an extraordinary nuclear occurrence.

[3]While the statute actually reads "unless such law is inconsistent with the provisions of such section," "such section" can only reasonably be interpreted to mean § 2210.

[4]The plaintiffs contend that the traditional Florida tort law standards for negligence, strict liability and loss of consortium claims should govern this action. The detailed federal standards for protection against radiation are found at 10 C.F.R. §§ 20.1001-20.2402.

FPL then moved to dismiss the case because the plaintiffs had failed to allege an essential element of a public liability action, to wit: for a negligence claim, exposure to radiation in excess of the permissible "dosage" levels set by federal regulation; or, for a strict liability cause of action, offsite exposure from an event declared to be an extraordinary nuclear occurrence by the Nuclear Regulatory Commission. Since there was no extraordinary nuclear occurrence involved in this case, the district court concluded that, to state a negligence claim under the Amendments Act, the plaintiffs must allege and prove that the defendant breached its duty of care by exposing Bertram Roberts to an amount of radiation in excess of federally defined permissible radiation dose standards. In other words, state standards of care were preempted by federal regulatory standards in cases involving exposure to radiation. Since the plaintiffs had failed to allege that Bertram Roberts had been exposed to such excessive levels of radiation, the court granted FPL's motion to dismiss. The plaintiffs filed this appeal from that order.

### III. STANDARD OF REVIEW

We review the dismissal of a complaint for failure to state a claim for relief de novo, accepting all allegations in the complaint as true and construing those allegations in the light most favorable to the plaintiffs. Lopez v. First Union National Bank of Florida, 129 F.3d 1186, 1189 (11th Cir. 1997). A complaint may not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitled them to relief. Id.

### IV. DISCUSSION

On appeal, the plaintiffs maintain that, rather than preempting state law standards of care, the language of § 2014(hh), quoted above, actually preserves them. They assert that the section

4

preempts state law only to the extent it is inconsistent with § 2210, which governs, inter alia, indemnification for plant operators, abrogation of certain defenses in public liability actions and limitations on aggregate liability. They argue that § 2210 does not even mention radiation exposure limits and further contend that, since the statute is so clear on this point, there is no need to inquire whether it impliedly preempts state standards of care. They also urge that, even if that inquiry were to be undertaken, there is no inconsistency between the federal standard and common-law tort standards but, rather, that the state tort standards further federal objectives in this area.

FPL, on the other hand, urges that the comprehensive federal nuclear regulatory framework completely preempts the field of nuclear safety, in keeping with the clear language of § 2014(hh), and any state law rule of decision which is inconsistent with this statutory and regulatory framework has no force or effect.

The Supreme Court has concluded that "the safety of nuclear technology [is] the exclusive business of the Federal Government ...." Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Commission, 461 U.S. 190, 208, 103 S.Ct. 1713, 1724, 75 L.Ed.2d 752 (1983). This holding was reaffirmed one term later in Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). In that case, the Court held that "states are precluded from regulating the safety aspects of nuclear power." Id. at 240-41, 104 S.Ct. at 617.[5] The result is, as the Seventh Circuit Court of Appeals has observed, "state regulation of nuclear safety, through either legislation or negligence actions, is preempted by federal law." O'Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1105 (7th Cir.), cert. denied, 512 U.S. 1232 (1994).

---

[5]The plaintiffs contend that the Supreme Court's decision in Silkwood actually supports their position because the court held that even an award of punitive damages against a nuclear plant operator was not preempted by federal radiation dose regulations. As FPL points out, however, Silkwood was brought as a diversity tort action governed by Oklahoma law which was filed a decade before the enactment of the Amendments Act and the creation of the public liability action. Moreover, Silkwood's exposure to radiation in her apartment was two and one-half times the amount permitted by federal regulations. See Silkwood v. Kerr-McGee Corp., 485 F.Supp. 566, 583 (W.D. Okla. 1979).

5

Turning to the precise question presented by this case, virtually every federal court to consider the issue, including three circuit courts of appeals, have held that "federal regulations must provide the sole measure of the defendants' duty in a public liability cause of action." O'Conner, 13 F.3d at 1105; see also Nieman v. NLO, Inc., 108 F.3d 1546 (6th Cir. 1997); In re TMI Litigation Cases Consol. II, 940 F.2d 832 (3d Cir. 1991).[6] This is because "any state duty would infringe upon pervasive federal regulation in the field of nuclear safety, and thus would conflict with federal law." TMI, 940 F.2d at 859. Moreover, the federal statutory scheme limits the liability of operators of nuclear power facilities and provides for indemnification but does so against a stringent regulatory background. Therefore, as the Seventh Circuit Court of Appeals noted, "[i]mposing a standard of care other than the federal regulations would disturb the carefully crafted balance between private involvement and safety that Congress has achieved." O'Conner, 13 F.3d at 1105. Consequently, we join those courts in holding that federal safety regulations conclusively establish the duty of care owed in a public liability action. As the plaintiffs have failed to allege that FPL breached its duty of care by exposing Bertram Roberts to an amount of radiation in excess of the maximum permissible amount allowed by federal regulation, they have failed to state causes of action for negligence, strict liability or loss of consortium. See, e.g., McLellan v. Mississippi Power & Light Co., 545 F.2d 919 (5th Cir. 1977)(en banc).

The judgment of the district court is AFFIRMED.

---

[6]Because the Amendments Act provides that state law shall provide the substantive rules of decision in a public liability action, at least one court has begun its analysis by trying to determine if the state would apply the federal regulations as an absolute standard of care for a negligence action. O'Conner, 13 F.3d at 1103. The court went on to conclude, however, that even if the state would not do so, the federal safety standards would preempt the application of a state standard of care. Id. at 1105. Since we concur with the latter conclusion, we need not reach the question whether Florida would apply the federal regulations as the standard of care in a negligence action.