Richard **COTROMANO, Bethany Cotromano, on behalf of Elizabeth Cotromano, their minor daughter, Plaintiffs,**

v.

**UNITED TECHNOLOGIES CORPORATION, Pratt & Whitney Group, a Connecticut corporation, and Palm Beach Aggregates, LLC, a Florida corporation, Defendants.**

Case No. 13–80929–CIV.

United States District Court, S.D. Florida.

Signed March 24, 2014.

John Scarola, Mara Ritchie Poncy Hatfield, Searcy Denney Scarola Barnhart & Shipley, P.A., West Palm Beach, FL, for Plaintiffs.

Fabienne Elizabeth Fahnestock, Gunster, Yoakley & Stewart, P.A., Fort Lauderdale, FL, Gerard Joseph Curley, Jr., Gregor J. Schwinghammer, Jr., Gunster, Yoakley & Stewart, P.A., West Palm Beach, FL, Stephen James Rapp, Weinberg Wheeler Hudgins Gunn & Dial, LLC, Atlanta, GA, for Defendants.

### ORDER DENYING MOTION TO REMAND

KENNETH L. RYSKAMP, District Judge.

THIS CAUSE comes before the Court pursuant to Plaintiffs Richard and Bethany Cotromano's ("Plaintiffs") motion to remand, filed October 11, 2013 [DE 17].

Defendant Palm Beach Aggregates, LLC ("Aggregates") responded on October 28, 2013 [DE 26], and Defendant Pratt & Whitney Group ("Pratt & Whitney") responded on October 31, 2013 [DE 29]. Plaintiffs replied on November 12, 2013 [DE 35]. The Court held a hearing on the motion to remand on January 16, 2014. On January 23, 2014 [DE 51], Plaintiffs filed a motion to withdraw. Aggregates and Pratt & Whitney responded thereto on February 10, 2014 [DE 52, 53]. Plaintiffs replied on February 21, 2014 [DE 55]. These motions are ripe for adjudication.

## I. BACKGROUND

Plaintiffs are residents of the Acreage. In May of 2004, Bethany Cotromano noticed that her six month old daughter, Elizabeth Grace, seemed to be moving her eyes involuntarily. Testing revealed an inoperable optic nerve glioma located in the optic chiasm. Elizabeth Grace underwent chemotherapy for the purpose of stabilizing the tumor and is now legally blind. Plaintiffs allege that the tumor was caused by exposure to contamination within the Acreage, particularly ionizing radiation.

On August 16, 2013, Plaintiffs filed an action in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, captioned *Richard and Bethany Cotromano v. United Technologies Corporation, Pratt & Whitney Group, and Palm Beach Aggregates, LLC,* Case No.2013CA012960 AE. The complaint contains claims for negligence against Pratt & Whitney, negligence against Aggregates, trespass against Pratt & Whitney and Aggregates, Fl. Stat. Ch. 376 liability against Pratt & Whitney and Aggregates and strict liability against Pratt & Whitney and Aggregates. Pratt & Whitney and Aggregates each received a copy of the complaint on August 16,

2013. Pratt & Whitney removed the action to this Court on September 12, 2013 pursuant to 28 U.S.C. § 1331, citing both federal question jurisdiction and diversity jurisdiction in its notice of removal.[1] Plaintiffs move to remand.

## II. LEGAL STANDARD

Removal of an action is appropriate within 30 days of service of the complaint if the allegations establish that the case is removable. 28 U.S.C. § 1446(b). "The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The existence of a federal question in a state cause of action does not automatically confer federal question jurisdiction; instead, to support removal, the complaint must substantially involve a dispute over the validity, effect, or construction of federal law. *Dunlap v. G & L Holding Grp., Inc.,* 381 F.3d 1285, 1290 (11th Cir.2004). Vague allegations or inferences in the complaint are insufficient to warrant removal. *Greater Jacksonville Transp. Co. v. Jacksonville Port Authority,* 12 F.Supp.2d 1311, 1314 (M.D.Fla.1998).

If the case is not initially removable based on the allegations of the complaint, it may later be removed within 30 days of receipt of a pleading, motion, or other paper from which it can first be ascertained that the case is removable. 28 U.S.C. § 1446(b). The facts supporting removal must be stated unequivocally in the pleading, motion, or other paper.

1. Diversity jurisdiction does not exist here because Aggregates is a Florida corporation.

*Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 760 (11th Cir.2010).

### III. *DISCUSSION*

#### A. The Atomic Energy Act confers federal jurisdiction.

The Atomic Energy Act of 1954, as amended by the Price–Anderson Amendments Act of 2005, 42 U.S.C. § 2011 *et seq.* (the "Price–Anderson Act"), gives federal courts jurisdiction over tort actions arising from certain nuclear materials as defined in the statute. The statute expressly provides for removal of such actions brought in state court even when they assert only state-law claims:

> [T]he Price–Anderson Act transforms into a federal action "any public liability action arising out of or resulting from a nuclear incident," § 2210(n)(2). The Act not only gives a district court original jurisdiction over such a claim, but provides for removal to a federal court as of right if a putative Price–Anderson action is brought in a state court. Congress thus expressed an unmistakable preference for a federal forum, at the behest of the defending party, both for litigating a Price–Anderson claim on the merits and for determining whether a claim falls under Price–Anderson when removal is contested.

*El Paso Natural Gas Co. v. Neztsosie,* 526 U.S. 473, 484–85, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999) (internal citations omitted). The Eleventh Circuit has held that federal courts have exclusive jurisdiction over actions arising under the Price–Anderson Act. *See* 42 U.S.C. § 2210(n)(2); *see Hand v. Cargill Fertilizer, Inc.,* 157 Fed.Appx. 230, 233 (11th Cir.2005) (affirming removal of wrongful death action from Florida state court to the federal court.); *see also Roberts v. Florida Power & Light Co.,* 146 F.3d 1305, 1308 (11th Cir.1998) ("[F]ederal safety regulations conclusively

establish the duty of care owed in a public liability action" involving nuclear technology.)

The Price–Anderson Act provides, in pertinent part:

> With respect to *any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place,* or in the case of a nuclear incident taking place outside the United States, the United States District Court for the District of Columbia, *shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy.* Upon motion of the defendant or of the Commission or the Secretary, as appropriate, any such action pending in any State court (including any such action pending on August 20, 1988) or United States district court shall be removed or transferred to the United States district court having venue under this subsection.

42 U.S.C. § 2210(n)(2) (emphasis supplied).

A "public liability action" is any suit asserting public liability growing out of exposure to nuclear radiation. 42 U.S.C. § 2014(hh). A "public liability" is:

> legal liability *arising out of or resulting from a nuclear incident* or precautionary evacuation (including all reasonable additional costs incurred by a State, or a political subdivision of a State, in the course of responding to a nuclear incident or a precautionary evacuation)....

42 U.S.C. § 2014(w) (emphasis supplied). A "nuclear incident" is defined as:

> *any occurrence,* including an extraordinary nuclear occurrence, *within the United States causing,* within or outside the United States, bodily injury, sickness, disease, or death, or *loss of or damage to property, or loss of use of*

*property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material ...*

42 U.S.C. § 2014(q) (emphasis supplied). The statute defines "source material" as:

(1) *uranium, thorium,* or any other material which is determined by the Commission pursuant to the provisions of section 2091 of this title to be source material; or (2) ores containing one or more of the foregoing materials, in such concentration as the Commission may by regulation determine from time to time.

42 U.S.C. § 2014(z). The statute defines "special nuclear" material as:

(1) plutonium, uranium enriched in the isotope 233 or in the isotope 235, and any other material which the Commission, pursuant to the provisions of section 2071 of this title, determines to be special nuclear material, but does not include source material; or (2) any material artificially enriched by any of the foregoing, but does not include source material.

42 U.S.C. § 2014(aa).

■ "The federal courts have exclusive jurisdiction over actions arising under the Price–Anderson Act." *Hand,* 157 Fed. Appx. at 233 (citing 42 U.S.C. § 2210(n)(2); *Roberts,* 146 F.3d at 1308) (affirming removal of wrongful death action from Florida state court to federal court). Plaintiffs' allegations fall squarely within the unambiguous language of the Price–Anderson Act, which "creat[ed] an exclusive federal cause of action for radiation injury." *Roberts,* 146 F.3d at 1306.

■ Removal of this action is appropriate under the Price–Anderson Act because Plaintiffs have alleged tort claims based on alleged uranium and thorium contamina-tion. Plaintiffs allege in their complaint that their property was contaminated by, *inter alia,* Uranium–234, Uranium–235, Uranium–236 and Thorium. (Compl. ¶¶ 20–22.) Plaintiffs further allege that Pratt & Whitney used some or all of these radionuclides or its parent. (Compl. ¶¶ 28, 31.) According to Plaintiffs, Pratt & Whitney "failed to use and maintain these materials safely and has emitted these materials into the surface and ground waters in Corbett and into the Acreage as part of routine misuse, dumping and neglect." (Compl. ¶ 29.) Plaintiffs further claim that as a consequence of Defendants' misuse or improper disposal of the radionuclides, including Uranium and Thorium, the levels of radionuclides found at the Plaintiffs' properties "greatly exceeded the Maximum Contaminant Level (MCL) for alpha emitters set for drinking water by the Environmental Protection Agency of 15 picocuries per liter (pci/L)." (Compl. ¶ 51.) Removal is proper under Price–Anderson given the allegations of uranium and thorium contamination.

Plaintiffs do not deny the existence of a nuclear incident. Rather, Plaintiffs argue that Defendants required licensing and certain financial indemnification agreements for this matter to be removable. This argument is legally incorrect.

The plain language of the statute indicates that the possession of a license for radioactive material is unrelated to the jurisdiction issue. None of the statutory definitions limit the jurisdiction over nuclear claims to licensed activity. 42 U.S.C. § 2014(w) ("public liability"); 42 U.S.C. § 2014(hh)("public liability action"); 42 U.S.C. § 2014(q) ("nuclear incident"). Elsewhere in Price–Anderson Act, Congress expressly employed terms such as "licensed activity," "licensed facility," and "facility subject to licensing." *See e.g.,* 42 U.S.C. § 2201(m) ("Agreements regarding

production"); 42 U.S.C. § 2284(a) ("Sabotage of nuclear facilities or fuel"); *see United States v. Gonzales,* 520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal citations and quotations omitted). Thus, demonstration of a license for radioactive materials is not a prerequisite to federal jurisdiction under the plain language of the *Price–Anderson Act. Am. Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982) ("legislative purpose is expressed by the ordinary meaning of the words used").

Plaintiffs also argue that Defendants can only remove an action if they can point to an indemnification agreement under the Price–Anderson Act. Plaintiffs seem to refer to a portion of the Price–Anderson Act that provides for a limit on liability in public liability actions for certain entities that use radioactive materials that are indemnified by the federal government. *See* 42 U.S.C. § 2210(c)–(e). Those provisions relate to the indemnification and limitation of liability of licensed entities, not to federal court jurisdiction.

Plaintiffs cite *Gilberg v. Stepan Co.,* 24 F.Supp.2d 325, 340 (D.N.J.1998), for the proposition that Price–Anderson does not apply unless the defendant has an indemnification agreement on the theory that there would be no "nuclear incident" unless there was licensed activity. Price–Anderson does not require a party to have an indemnification agreement, however. A plain reading of the Price–Anderson Act contradicts the *Gilberg* court's flawed reasoning, as pointed out by the Fifth Circuit in *Acuna v. Brown & Root, Inc.,* 200 F.3d 335 (5th Cir.2000) and in *Carey v. Kerr-*

*McGee Chemical Corp.,* 60 F.Supp.2d 800 (N.D.Ill.1999). *Carey* explained that *Gilberg* improperly defined a "nuclear incident" to occur only when there was an "extraordinary nuclear occurrence" and for which there must be an indemnity agreement. 60 F.Supp.2d at 804–07. *Gilberg* ignored the intent of Price–Anderson by such a narrow construction. *Id.* at 807; *Acuna,* 200 F.3d at 339. The Price–Anderson amendments were enacted because Congress intended for federal law to apply not just to extraordinary nuclear occurrences, but also to "a broader class of nuclear liability cases ...." *Carey,* 60 F.Supp.2d at 807; *see also Acuna,* 200 F.3d at 339 ("one purpose behind the 1988 amendments was to expand the scope of federal jurisdiction beyond actions arising from 'extraordinary nuclear occurrences' only). As the Fifth Circuit explained in *Acuna,* "[t]here is nothing in the definition of 'nuclear incident' which suggests it should be contingent on whether the ... facility is covered under the separate indemnification portions of the [Price–Anderson] Act." 200 F.3d at 339. Thus, "Plaintiffs' attempts to reintroduce the limitations of 'extraordinary nuclear occurrence' into the 1988 amendments' substitution of 'nuclear incident' rely on faulty statutory interpretation and are contrary to Congressional intent." *Id.*

Plaintiffs further argue that there can be no federal jurisdiction unless the Defendants show "adequate financial protection" and an "indemnification agreement." In the Motion for Remand, there is no citation to the statute and no context. But the financial protection language essentially tracks a different provision of the Act, which undercuts Plaintiffs' argument. Section 2210(a) states that "licensees shall ... have as a condition of the license a requirement that the licensee have and maintain financial protection of such type and in such amounts as the Nuclear Regu-

latory Commission ... shall require ...." 42 U.S.C. § 2210(a). Thus, the financial protection is a condition of obtaining a license, not a condition of establishing jurisdiction. The section goes on to state that "it may be a further condition of the license that the licensee execute and maintain an indemnification agreement ...." *Id.* (emphasis supplied). Whether or not Defendants have indemnification agreements with the federal government is not dispositive of the applicability of Price-Anderson to this case.

## B. Plaintiffs are not entitled to further jurisdictional discovery.

Plaintiffs contend they need additional discovery regarding the sources and suppliers of Defendants' radioactive materials for the actions to stay in federal court. As an alternative to discovery, Plaintiffs request that the Defendants' "declarations, licenses and other disclosures be stricken ..." [DE–51] at 2. The requested discovery is not warranted at this time because the Court's jurisdiction is based on the well-pleaded allegations of the Complaint, which establish that the Court has subject matter jurisdiction pursuant to 42 U.S.C. § 2210(n)(2). Striking the licenses is also unwarranted, as the licenses are unnecessary for demonstrating jurisdiction.

## IV. *CONCLUSION*

THE COURT, being fully advised and having considered the pertinent portions of the record, hereby

ORDERS AND ADJUDGES that the motion to remand, filed October 11, 2013 [DE 17] and the motion to withdraw, filed January 23, 2014 [DE 51], are DENIED.